**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

ROBERT HEFFERNAN,
ADC #76641                                                                                              PLAINTIFF

v.                                         5:10-cv-00147-JLH-JJV

GRANT HARRIS, Deputy Director,
Arkansas Department of Correction; *et al*.                                              DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following partial recommended disposition has been sent to Chief United States District Judge J. Leon Holmes. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a new hearing for this purpose before either the District Judge or Magistrate Judge, you must, at the time you file your written objections, include the following:

1.     Why the record made before the Magistrate Judge is inadequate.

2.     Why the evidence to be proffered at the new hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

This matter is before the Court on Plaintiff's Motions for Preliminary Injunctive Relief (Doc. Nos. 3, 12), and Defendants' Motion to Dismiss as Frivolous (Doc. No. 15). Defendants filed a Response in Opposition (Doc. No. 17), and Plaintiff responded to Defendants' Motion (Doc. No. 19). This Court held a hearing on the pending Motions on August 5, 2010, at which time both parties presented evidence and testimony in support of their respective positions. In light of the evidence presented, the Court determined at the close of the hearing to construe Defendants' Motion to Dismiss (Doc. No. 15) as a Motion for Summary Judgment, pursuant to FED.R.CIV.P. 12(d). The Court provided Plaintiff with additional time in which to file a brief in support of his position (Doc. No. 28). Having reviewed the motions, evidence, testimony, and responsive briefs, the Court renders the following Proposed Findings and Recommendations.

## I.    INTRODUCTION

Mr. Heffernan, a state inmate incarcerated at the Varner Unit of the Arkansas Department of Correction (ADC), filed this action against Defendants pursuant to 42 U.S.C. § 1983, alleging

deliberate indifference to his serious medical needs. In his complaint, Plaintiff states he is a diabetic and receives insulin injections daily, and requires a full meal following each injection to maintain an adequate glucose level. Heffernan alleges Defendants instituted a new holiday meal policy in December 2009, serving inmates only two full meals on holidays. Pursuant to this policy, Plaintiff alleges he received only a bologna sandwich and a cup of juice following the 2:00 a.m. diabetic call on Christmas Day, New Year's Day, Martin Luther King Day, and Presidents' Day. As a result, Heffernan alleges he suffered from extremely low glucose levels and on one occasion went into diabetic shock. On non-holidays, Heffernan receives a full meal following the 2:00 a.m. diabetic call, which is sufficient to maintain adequate glucose levels.

In his first Motion for Preliminary Injunctive Relief (Doc. No. 3), Mr. Heffernan asked the Court to direct Defendants to provide him a full meal following the 2:00 a.m. diabetic call on Memorial Day, to prevent him from suffering harm similar to that suffered on the previous holidays. In his second Motion (Doc. No. 12), Plaintiff asked for the same relief on the Fourth of July holiday.

Defendants responded to the Motions by stating they were filing a Motion to Dismiss Plaintiff's Complaint as Frivolous, based on the lack of an alleged constitutional violation and the lack of injury suffered by Plaintiff. On that basis, Defendants stated preliminary injunctive relief was inappropriate, because Plaintiff could not show he sustained irreparable harm. Following that response, Defendants filed their Motion to Dismiss, stating Plaintiff sued the wrong individuals since they are not involved in feeding Plaintiff, and that Plaintiff cannot recover damages in a § 1983 action based on allegations of negligent conduct. Plaintiff countered that all Defendants were involved in developing the policy which interfered with his medical care and treatment. In addition, despite his filing grievances after suffering low glucose levels caused by the holiday meal policy, Plaintiff stated Defendants did not act to correct the situation. Finally, Plaintiff stated all Defendants

personally participated in causing him harm, and were deliberately indifferent to his serious medical needs by interfering with his medically-prescribed diet and treatment.

Following a review of the parties' submissions, the Court determined a hearing on both Motions would be helpful in resolving the issues presented.

## II.   HEARING

### A.   Injunctive Relief Motions

Plaintiff testified he has suffered from diabetes for about four years and experienced no problems until December 2009, when Defendants changed the holiday meal policy. After the 2:00 a.m. diabetic call on December 25, 2009, Plaintiff stated he received a bologna sandwich and a glass of juice, and did not receive a full meal until breakfast was served about 9:30 a.m. The lack of a full meal following his injection on that date resulted in a drop in his glucose level and he developed the shakes. He went to the Infirmary and received a glucose injection which resolved his problem. However, on Martin Luther King Day, January 18, 2010, Plaintiff stated he "crashed" and went into a diabetic coma when he did not receive a full meal following the 2:00 a.m. diabetic call. He stated this was "an on-going thing...every holiday", and because he cannot afford to buy extra food at the commissary, he is dependent on receiving three full meals per day through the kitchen. He stated if he is not provided adequate food following his shots, his blood sugar crashes. He did admit that on July 4, 2010, he received a full breakfast after the 2:00 a.m. diabetic call and did not suffer any ill effects.

During the hearing, the Court learned that Defendants had changed their holiday meal policy prior to the July 4, 2010, holiday. Yolanda Clark, Food Production Manager at the Varner Unit, testified that a few days prior to that holiday, a new policy was instituted, which provides a full breakfast for diabetics following the 2:00 a.m. diabetic call. Defendants admitted into evidence a

memorandum from Clark to Kitchen Supervisors, dated June 28, 2010, which provides as follows:

> "Be advised effective the 4th of July all Diabetics are to be given a full breakfast at the 2:00 am diabetic-call. They will then eat with their barracks for morning brunch and again for afternoon dinner. At dinner in addition to their regular tray, they will receive a sack lunch containing one portion each of meat, fruit, milk, and their H&S snack. Each sack lunch must be signed for by the inmate."

(Defs.' Ex. 1).

Ms. Clark stated Plaintiff's complaints did not cause the policy change, and the staff regularly reviews the policies. The staff had determined it was easier to serve three full meals to all inmates rather than two full meals to all, plus sack lunches to the diabetic inmates. She stated the new policy would remain in effect until there was a need for change.

The Court asked Plaintiff if the change resolved the issues set forth in his complaint. Plaintiff indicated that as long as the present policy remained in effect, he had no problem with it, and was willing to withdraw his Motions for Injunctive Relief. However, he wishes to be compensated for the associated costs and tested for possible damage attributable to his diabetic incidents, and he was not willing to dismiss his lawsuit. In light of this, the Court heard testimony on the Motion to Dismiss, which is now construed as a Motion for Summary Judgment.

### B.      Motion to Dismiss (Summary Judgment)

Pursuant to FED.R.CIV.P. 56(c), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Dulaney v. Carnahan,* 132 F.2d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Webb v. Lawrence County,* 144 F.3d 1131, 1134 (8th Cir. 1998). "Once the moving party has met this burden, the non-moving party

cannot simply rest on mere denials of allegations in the pleadings; rather, the non-movant must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Id*.

The Court finds as a matter of law that Defendants' actions did not constitute deliberate indifference to Plaintiff's serious medical needs, and therefore, did not violate Plaintiff's constitutional rights. To support a claim for an Eighth Amendment violation, plaintiff must prove that defendants were deliberately indifferent to a serious medical need. *Farmer v. Brennan, supra,* 511 U.S. 825, 827 (1994). However, even negligence in diagnosing or treating a medical condition does not constitute a claim of deliberate indifference. *Estelle v. Gamble*, 429 U.S. 197 (1976). Rather, the "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation," *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). *See also Smith v. Marcantonio*, 901 F.2d 500, 502 (8th Cir. 1990) (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment). Deliberate indifference is the "reckless disregard of a known, excessive risk of serious harm to inmate health or safety." *Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998), *quoting Farmer, supra*, 511 U.S. at 836-38.

Plaintiff alleges he suffered for eight months due to the two-meal holiday policy which Defendants refused to change, despite his grievances and complaints. However, according to the testimony and evidence presented, five holidays are at issue: December 25, 2009; January 1, 2010; January 18, 2010; February 15, 2010; and May 31, 2010. On each of those dates, when Plaintiff's blood sugar level dropped, he was treated in the Infirmary. On one of those occasions, Martin

Luther King Day, Plaintiff suffered a "hypoglycemic incident" with a blood sugar level of 49, according to the Condensed Health Services Encounter. (Doc. No. 17, p. 24). He was taken to the Infirmary where he was provided a glucogen injection and monitored until his blood sugar reached a "therapeutic level." *Id.*

In addition to providing Plaintiff with adequate medical treatment for his blood sugar level variations, Defendants also testified that at all times Plaintiff was provided with the number of calories required for an adequate diet. Defendants presented copies of Plaintiff's Special Diet Request forms, dated May 1, 2009; May 14, 2009; and April 28, 2010. (Defs.' Exs. 2A-C). According to these "scripts," Plaintiff should receive a diet of 2200 calories per day. Ms. Clark testified that although Exhibit 2A also notes that Plaintiff is to be provided peanut butter rather than bologna sandwiches, the physician who wrote this request by-passed the policy which requires prior approval by a dietician before the kitchen can abide by the request. Therefore, the second "script," dated May 14, 2009, corrects that problem and does not include a special request for peanut butter. (Defs.' Ex. 2B). Clark further stated dieticians are responsible for ensuring that Plaintiff's daily caloric intake equals 2200, and she never deviated from the dietician's instructions concerning Plaintiff's diet. Ms. Clark also stated that even under the two meal holiday policy, Plaintiff received the prescribed number of calories per day. Finally, Defendant stated the kitchen is open 24 hours per day, and if medical personnel send an inmate to the kitchen for food, they will receive it.

The Court also finds no evidence of serious harm to the Plaintiff. Dr. Roland Anderson, Regional Medical Director for Correctional Medical Services, Inc. (CMS), which contracts with the ADC for medical care of inmates, testified on behalf of the Defendants. Dr. Anderson reviewed portions of Plaintiff's medical records and found no indication that Plaintiff suffered any permanent injury as a result of the periodic drop in his blood sugar levels. Dr. Anderson also stated he found

no indication to support a finding that Plaintiff is suffering from any type of brain damage as a result of the drop in his sugar levels. He stated it is difficult to distinguish minor issues from those caused by ordinary "old age" progressions and genetics, noting Plaintiff's age of 62.

As to the food Plaintiff received on the dates at issue, Dr. Anderson testified that the type of food doesn't matter as long as the diabetic inmate receives proteins, carbohydrates and the required calories, and that either a peanut butter or bologna sandwich will suffice. He also stated that a diabetic patient's blood sugar level is not as important as the rate at which it drops or other factors which can affect a patient's health.

To Plaintiff's grievance appeal filed January 1, 2010 (Doc. No. 2, Ex. E), ADC chief Deputy Director Larry May replied that if Plaintiff feels his health is affected during the holidays due to the lack of the third meal, he should ask to see the doctor and make his concern known "so that the issue can be addressed and monitored." The same response was given to Plaintiff's grievance filed January 18, 2010 (Pl. Ex. 2). Plaintiff, however, does not claim he tried to contact his physician concerning this issue. He also does not indicate that he approached the Infirmary concerning the lack of appropriate food following the 2:00 a.m. diabetic call on holidays.

The Court finds no dispute that at all times Plaintiff received the adequate number of calories needed to maintain his diet, or that Defendants provided adequate medical treatment to him when his blood sugar levels dropped. Plaintiff also has presented no evidence that Defendants acted with reckless disregard to a known or excessive risk of serious harm to his health or safety, as noted in *Jackson, supra*. Plaintiff alleges one serious incident which occurred on Martin Luther King Day, and for which he was treated, and on the other four dates, he alleges he felt lousy. Plaintiff is unsure whether he has suffered harm and asks to see an outside doctor for testing. Because the holiday meal policy at issue has been resolved, and Plaintiff provides no evidence of serious harm,

the Court finds as a matter of law that Defendants' actions were not deliberately indifferent to Plaintiff's serious medical needs.

### III.   CONCLUSION

IT IS, THEREFORE, RECOMMENDED THAT:

1)   Plaintiff's Motions for Preliminary Injunctive Relief (Doc. Nos. 3, 12) be DENIED as moot.

2)   Defendants' Motion to Dismiss, which this Court construes as a Motion for Summary Judgment (Doc. No. 15) be GRANTED.

3)   Plaintiff's complaint against Defendants be DISMISSED with prejudice.

DATED this 16th day of September, 2010.

JOE J. VOLPE  
UNITED STATES MAGISTRATE JUDGE